FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Jan 27 2022

KEVIN P. WEIMER, Clerk

By: /s/Sonya Lee Coggins
Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Malachi Mullings

**CRIMINAL COMPLAINT**

Case Number: 1:22-MJ-086

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.  In or about at least March 2018 and continuing through in or about at least April 2021 in Fulton and Gwinnett Counties, in the Northern District of Georgia, defendant(s) did,

conduct and attempt to conduct a financial transaction, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of  United States Code, Section 1956(a)(1)(B)(i); and did

knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity

I further state that I am a(n) Special Agent with the Internal Revenue Service, Criminal Investigations and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

Signature of Complainant
Jeffrey Shelton

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

January 27, 2022                                              at   Atlanta, Georgia
Date                                                                       City and State

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

AUSA Kelly K. Connors / 2019R000725 /
Kelly.Connors@usdoj.gov

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jeffrey Shelton, depose and state under penalty of perjury:

1. I am a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI) and have been so employed since November 2018. I am a federal law enforcement officer who is authorized to conduct financial investigations and make arrests pertaining to violations of the Internal Revenue Code and other federal criminal offenses covered under Titles 26 and 18 of the United States Code, including identity theft, money laundering, wire fraud, mail fraud, and other federal financial violations covered Title 31 (Bank Secrecy Act). I earned a Bachelor of Science in Business Administration and Bachelor of Science in Criminal Justice from Western Carolina University in 2017. Furthermore, I attended and graduated from the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia in 2019. During my time at FLETC, I graduated from the Criminal Investigator Training Program and Special Agent Basic Training. During these two training courses, I studied a variety of law enforcement, criminal investigator, and tax crime issues, including search and seizure, violations of Internal Revenue Laws, and Internal Revenue Service procedures and policies in criminal investigations. I have also received extensive on-the-job training.

2. This affidavit is submitted in support of a criminal complaint against MALACHI MULLINGS for money laundering, in violation of 18 U.S.C. § 1956(a), and transactions in criminally derived property, in violation of 18 U.S.C. § 1957(a).

3. Since this affidavit is being submitted for the purpose of issuing a criminal complaint and securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to

establish probable cause to believe that MALACHI MULLINGS ("MULLINGS") committed acts in violation of the aforementioned sections of Title 18 of the United States Code.

## OVERVIEW

4. This is a joint investigation involving the FBI, IRS-CI, Department of Health and Human Services – Office of Inspector General (HHS-OIG), Homeland Security Investigations (HSI), and others. Evidence developed to date indicates that MULLINGS, who at various times resided in the Northern District of Georgia and Florida, opened multiple bank accounts in the name of THE MULLINGS GROUP LLC ("THE MULLINGS GROUP"), a shell company he established. Certain of these accounts then received, either directly or after having been layered through other accounts, the proceeds of financial fraud schemes that affected multiple victims. MULLINGS rapidly depleted the funds through cash withdrawals, the purchase of cashier's checks, transfers to other accounts, and the purchase of luxury items, including a vehicle and jewelry. There is probable cause to believe that MULLINGS engaged in money laundering, i.e., that he conducted financial transactions with these fraud proceeds for the purpose of concealing their nature, location, source, ownership, and control, in violation of 18 U.S.C. § 1956, and that he conducted transactions in criminally-derived property in excess of $10,000, in violation of 18 U.S.C. § 1957.

## BACKGROUND

5. Business Email Compromise ("BEC") schemes are sophisticated scams conducted by organized fraud rings which target businesses and other entities which regularly perform wire transfers or other money transfers. In such schemes, perpetrators of the fraud, using spoofed email accounts, pose as customers or other legitimate business partners and send emails to the victim designed to divert payments to a new bank account.

6. Romance fraud and "new friend" schemes are schemes in which victims are duped into parting with their money by fraudsters who pose as romantic partners or individuals in distress and request money to help resolve their problems.

7. In both types of schemes, the first destination for the fraudulent proceeds may be an account controlled by a knowing participant who opened the account for the purpose of receiving and laundering money, or it may be an account controlled by an individual who is unknowingly participating in the fraud conspiracy as a money mule.

8. Once the funds have entered the accounts of the perpetrators, whether directly from victims or indirectly through intermediate accounts, the funds are quickly depleted. The most common methods of depletion are the purchase of cashier's checks, wire transfers to account holders in foreign countries, and cash withdrawals.

9. Based upon my training and experience, I know that when engaged in money laundering and the wire fraud and bank fraud schemes that generate the fraudulent proceeds, criminals that are behind the schemes often are not the same persons that are listed on bank accounts, business documents, or any other type of correspondence that would directly link them to the crime. I also know that criminals conduct concerted efforts to conceal and layer the source of the fraudulently obtained funds to include moving the funds rapidly from one geographical location to another, as well using individuals who have no readily apparent ties to the perpetrators of the scheme to conduct the financial transactions.

A. **Establishment of THE MULLINGS GROUP LLC**

10. According to publicly available records from the Georgia Secretary of State, articles of organization for THE MULLINGS GROUP were filed with the Secretary of State's office on or about March 6, 2018. MULLINGS was listed as the organizer of the company. Your

affiant has visited the Secretary of State's website and observed that it lists the NAICS (North American Industry Classification System) Code for THE MULLINGS GROUP as "Transportation and Warehousing," and the NAICS Sub Code as "General Freight Trucking, Long-Distance, Truckload."

### B. THE MULLINGS GROUP Bank Accounts in General

11. In the course of this investigation, federal agents have identified at least 20 bank accounts in the name of THE MULLINGS GROUP with MULLINGS as signatory.

12. Account opening records for several of these accounts contain additional representations about THE MULLINGS GROUP.

    a. Records show that Delta Community Credit Union savings Account No. 1699 and checking Account No. 2967 (Delta Accounts) were opened in the name of THE MULLINGS GROUP, with MULLINGS as the sole signatory, on or about September 18, 2019, in the Northern District of Georgia. Within the records is a document entitled Business Deposit Account Application. In the block entitled Business Type, which states "What type of business are you in? Describe the primary nature and function of your business," are written the words "Freight trucking logistics (Long Distance)." On another page of the application, it is estimated that on a monthly basis, 2 wires will be sent for "contract payments, driver payment," and 3 wires will be received for "contract payments."

    b. Records for Woodforest Bank Account No. 3439 (Woodforest 3439) show that a business checking account was opened in the name of THE MULLINGS GROUP, with MULLINGS as sole signatory, on or about June 1, 2020, in the Northern District of Georgia. Within the records is a document entitled Business

        Account Application.  In the block entitled Nature of Business it states "Trucking," and in the block entitled Brief Description of Business Activity and Services Offered it states "Business carries general freight to manufacturers." Major suppliers are described as "Amazon, Macy's, Snider Pretzel."

13.    Also contained within both the Delta Accounts and Woodforest 3439 records is an IRS letter to THE MULLINGS GROUP, dated on or about February 28, 2018, showing that THE MULLINGS GROUP applied for and received a federal Tax Identification Number (TIN).

14.    Your affiant and other agents involved in this investigation have reviewed the Delta and Woodforest records, as well as records of the other bank accounts opened by THE MULLINGS GROUP, and have not observed payments or receipts consistent with the representations about trucking business operations made in these account opening documents.

15.    As set forth below, in the course of the federal investigation, your affiant and other law enforcement agents have identified multiple instances in which money flowed from an initial BEC fraud, to layering accounts, and ultimately to accounts controlled by MULLINGS.  The transactions discussed herein are not the only examples known to law enforcement in which accounts associated with THE MULLINGS GROUP were used to receive and launder fraud proceeds accounts.  Rather, they are described to demonstrate probable cause to believe that MULLINGS committed the criminal offenses listed above.

    C.    **Use of Fifth Third Bank Account No. 9108 to Launder Fraudulently Obtained Funds From Victim-1**

16.    On or about August 26, 2020, a business checking account ending in 9108 was opened at Fifth Third Bank (FT 9108).  FT 9108 was opened in the name of THE MULLINGS GROUP, LLC, with the sole signatory on the account listed as MALACHI MULLINGS.  The signature on the account opening document appears similar to a signature of MULLINGS on his

5

Georgia driver's license. The address for the account at opening was listed as 3495 Buckhead Loop NE, Ste 115, Atlanta, GA 31126.

17. As stated above, FT 9108 was opened in late August 2020. The account was closed approximately two months later, in or about October 2020. During this short time, FT 9108 received more than $319,000 in deposits. Approximately 97% of these deposits came from a $310,000 check from an entity with no apparent association to FT 9108 or the purported business THE MULLINGS GROUP. There does not appear to have been legitimate business activity conducted in this account.

18. In July 2020, Victim-1, a state Medicaid program, fell victim to a BEC fraud scheme in which fraudulent Electronic Fund Transfer forms were submitted for the purpose of changing the bank account information on file for Medicaid payments to certain hospitals. As a result of the scheme, Medicaid payments made by Victim-1 which were intended for a hospital were fraudulently diverted to JPMorgan Chase Account No. 2506 (JPMC 2506). Between approximately July 30, 2020, and September 10, 2020, Victim-1 wired approximately $3,550,630 to JPMC 2506. Records for this account show that it was a business account held in the name of a company with an address at a virtual office location. Victim-1 was not able to recover most of the funds that were diverted to JPMC 2506.

19. On or about August 31, 2020, using proceeds diverted from Victim-1, a $310,000 check drawn on JPMC 2506 was made payable to THE MULLINGS GROUP. Subsequently, on or about September 2, 2020, the $310,000 check was deposited into FT 9108 at a branch in the Northern District of Georgia. The account had a balance of $7,100 prior to the $310,000 deposit.[1]

---

[1] Of that amount, $6,000 had been deposited on September 1 in the form of a Bank of America cashier's check from remitter S.H.

There was no apparent trucking or logistics business activity in FT 9108 before or after the deposit of the $310,000 check. The most significant expenditures were a $145 purchase at Auto Spa Bistro in Atlanta on September 8, and a $390.55 purchase at Louis Vuitton in Aventura, Florida on September 14.

20. After the $310,000 check was deposited into FT 9108, all funds in the account were depleted by October 7, 2020, due to the account being closed. The funds were withdrawn primarily via two cashier's checks totaling approximately $310,000.

    a. The first cashier's check, in the amount of $200,000, was deposited into Woodforest Account No. 3439 (Woodforest 3439), an account opened on or about June 1, 2020 in the name of THE MULLINGS GROUP, LLC, on which MULLLINGS was the sole signatory, at a branch in Duluth, Georgia. Purchases were subsequently made with these funds at luxury retailers, including $15,536 at Saks Fifth Avenue and $7,460 at Chanel.

    b. The second cashier's check, in the amount of $110,201.74, was deposited into Citibank Account No. 0770 (Citi 0770) as part of an account opening deposit on or about October 13, 2020, totaling $207,153.15.[2] Citi 0770 was opened in the name of THE MULLINGS GROUP and listed MULLINGS as the sole signatory. Purchases were subsequently made with these funds at luxury retailers, including $4,922 and $7,889.70 at Chanel. A series of withdrawals was also made, including:

---

[2] Records show that two other cashier's checks were deposited along with the $110,201.74 check from FT 9108, making the total deposit $207,153.15. These other checks were also cashier's checks from Fifth Third Bank accounts in the name of THE MULLINGS GROUP. All three cashier's checks are dated October 7, 2020, and all bear the memo "Account Closing."

      i. $7,000 on October 15

      ii. $10,000 on November 3

      iii. $15,000 on November 6

      iv. $24,000 on November 6

      v. $10,000 on November 10

      vi. $5,000 on November 16

**D.** **Additional Use of Citi 0770 to Launder Fraudulently Obtained Funds From Victim-2**

21. As stated immediately above, Citi 0770, an account in the name of THE MULLINGS GROUP opened on October 13, 2020, received a portion of the proceeds of the BEC fraud on Victim-1 after those funds had been routed through another company's bank account at JPMC and FT 9108. In addition, Citi 0770 received fraud proceeds from another victim after the funds had been routed through an intermediate account, as described below.

22. In or about February 2021, Victim-2, an individual, fell victim to a romance fraud scheme. Agents involved in this investigation interviewed Victim-2, who stated that he/she had corresponded by email and telephone with a person who persuaded Victim-2 to send money to purchase equipment. Victim-2 made multiple transfers of funds from Victim-2's bank account, including sending a cashier's check in the amount of $157,000 to Bank OZK Account No. 7387 (OZK 7387), an account opened in the Northern District of Georgia, based on a fraudulent misrepresentation that the company in whose name the account was held was the agent for Victim-2's purported romantic correspondent. Records for OZK 7387 show that the account was held in the name of a Georgia limited liability company.

23. The $157,000 cashier's check from Victim-2 was deposited in OZK 7387 on or about February 11, 2021. As of the day before, the account balance was negative. After the

8

deposit of the cashier's check, there were additional large inflows and outflows of funds in OZK 7387.

24. On or about March 22, a cashier's check in the amount of $48,000 was obtained from OZK 7387 in the Northern District of Georgia. This check was deposited into THE MULLINGS GROUP's Citi 0770 account on or about March 25. That same day, there was a withdrawal of $15,000 and a wire transfer of $15,000 from Citi 0770.

25. On or about March 29, a cashier's check in the amount of $30,000 was obtained from OZK 7387 in the Northern District of Georgia. This check was deposited into THE MULLINGS GROUP's Citi 0770 account on or about March 29.

26. Shortly after the deposit of the $48,000 and $30,000 cashier's checks into Citi 0770, there was one large deposit of $101,000 on March 30, and then on April 1, bank records indicate a wire transfer of $50,000 was made to Hendrick Automotive Group. The next day, another $68,000 cashier's check from OZK 7387 obtained in the Northern District of Georgia was deposited into Citi 0770, and bank records then show $29,000 and $20,000 payments to Mall of Georgia Mini in Buford, as well as purchases of jewelry and luxury items.

**E.    Use of Woodforest 3439 and Fifth Third Bank Account No. 9090 to Launder Fraudulently Obtained Funds From Victim-3**

27. As stated in paragraph 12(b) above, Woodforest 3439 was opened in the name of THE MULLINGS GROUP, with MULLINGS as the sole signatory, in the Northern District of Georgia. The account was opened on or about June 1, 2020. The signature on the account opening document appears similar to a signature of MULLINGS on his Georgia driver's license. The address for the account at opening was listed as 3495 Buckhead Loop NE, Ste 115, Atlanta, GA 31126.

9

28. In or about August 2020, Victim-3, an individual, fell victim to a romance fraud scheme. Agents involved in this investigation interviewed Victim-3, who stated that he/she met an individual on a dating website in approximately April 2020 and subsequently communicated with this individual through phone calls, Skype calls, and text messages. This individual persuaded Victim-3 to send money for purported business investments, instructing Victim-3 to send cashier's checks payable to THE MULLINGS GROUP to another individual at an address in Stone Mountain, Georgia. The individual assured Victim-3 that he/she would be paid back but Victim-3 was never paid back. Victim-3 directed funds to THE MULLINGS GROUP, as described below.

        i. *Funds deposited in Woodforest 3439*

29. On or about August 21, 2020, Victim-3 obtained a $200,000 cashier's check payable to THE MULLINGS GROUP and sent it to the Stone Mountain, Georgia address. On or about August 22, 2020, the $200,000 cashier's check procured by Victim-3 was deposited into Woodforest 3439. The back of the check bears a signature that appears to be the same as on MULLINGS' Georgia driver's license. Between the opening of the account and August 22, there had been no activity other than a $50,000 deposit that was reversed and a $400 deposit.

30. On or about September 4, 2020, a cashier's check in the amount of $200,000, drawn on Woodforest 3439, was purchased in the Northern District of Georgia and made payable to Ferrari of Atlanta in Roswell, Georgia. Records obtained from Ferrari of Atlanta confirm that it received the $200,000 cashier's check. The funds were used in combination with additional funds obtained from Victim-3, discussed below, to purchase a 2017 Ferrari 488 Spider. According to the retail purchase agreement, the purchaser was MULLINGS and the vehicle had a total purchase price of $265,200. The purchase agreement, as well as other documents associated

with the vehicle purchase, bear signatures that appear to be the same as on MULLINGS' Georgia driver's license. In addition, Ferrari of Atlanta records indicate that the vehicle's title was reassigned to MULLINGS.

    ii. *Funds deposited in FT 9090*

31. Victim-3 obtained a second cashier's check payable to THE MULLINGS GROUP on or about August 25, 2020. This check, in the amount of $60,000, was sent to the same Stone Mountain, Georgia address as the first check. On or about August 26, 2020, in the Northern District of Georgia, the $60,000 cashier's check was deposited into a business checking account ending in 9090 at Fifth Third Bank (FT 9090), as the account opening deposit. FT 9090 was in the name of THE MULLINGS GROUP, with the sole signatory on the account listed as MALACHI MULLINGS. The signature on the account opening document appears similar to a signature of MULLINGS on his Georgia driver's license. The address for the account at opening was listed as 3495 Buckhead Loop NE, Ste 115, Atlanta, GA 31126. The back of the check bears a signature that appears to be the same as on MULLINGS' Georgia driver's license.

32. On September 4, 2020, a cashier's check in the amount of $65,200, drawn on the FT 9090 account, was made payable to Ferrari of Atlanta.[3] This check, combined with the $200,000 check from the Woodforest 3439 account, was used by MULLINGS to purchase the 2017 Ferrari 488 Spider described above.

**F.** **Use of Ameris Bank Account No. 2870 to Launder Fraudulently Obtained Funds From Victim-4**

33. On or about September 16, 2019, a business checking account ending in 2870 was opened at Ameris Bank (Ameris 2870). Ameris 2870 was opened in the name of THE

---

[3] There were transfers from another MULLINGS GROUP account at Fifth Third Bank into FT 9090 on September 4, such that there was a sufficient balance.

11

MULLINGS GROUP, LLC, with the sole signatory on the account listed as MALACHI MULLINGS. The signature on the account opening document appears similar to a signature of MULLINGS on his Georgia driver's license. The address for the account at opening was listed as 3495 Buckhead Loop NE, Apt 115, Atlanta, GA 31126.

34. In or about the summer of 2019, Victim-4, an individual, fell victim to a romance fraud scheme. Agents involved in this investigation interviewed Victim-4, who stated that he/she had corresponded by email, telephone and text with a person purporting to be in the oil business overseas who persuaded Victim-4 to send money to pay for expenses. On or about November 6, 2019, at the direction of the person with whom Victim-4 was corresponding, Victim-4 made a wire transfer in the amount of $150,000 from his/her account to Ameris 2870. As of the date of the transfer, the account had a negative balance, with overdraft fees having been charged on November 4.

35. Records for Ameris 2870 show that between November 8 and November 19, 2019, approximately $122,000 was depleted through six checks payable either to cash or MULLINGS, and signed by MULLINGS. The amounts of these checks were $28,369, $12,000, $20,000, $15,000, $30,000, and $17,000. Additional funds were depleted through Cash App transfers, cash advances, and purchases of goods and services.

## CONCLUSION

36. Based on the foregoing, I respectfully submit that this affidavit supports probable cause for the issuance of a criminal complaint for MALACHI MULLINGS for money laundering, in violation of 18 U.S.C. §§ 1956(a) and 1957(a).